IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-HC-02190-M

ELVIN IRIZARRY,                          )
                                         )
                      Petitioner,        )
                                         )
            v.                           )          **ORDER**
                                         )
WARDEN R. RAMOS,                         )
                                         )
                      Respondent.        )


This cause is before the court on respondent's motions to dismiss [D.E. 20]. For the reasons

discussed below, the court grants this motion.

Procedural History:

On October 7, 2020, Elvin Irizarry ("petitioner"), a federal inmate, filed *pro se* a petition

for a writ of habeas corpus under 28 U.S.C. § 2241. Pet. [D.E. 1].

On December 15, 2021, the court allowed the action to proceed. Order [D.E. 5].

On December 22, 2021, petitioner moved to amend his petition, Mot. [D.E. 8], and the

court granted the motion on January 31, 2022, Order [D.E. 10].

On April 15, 2022, respondent filed proposed sealed documents [D.E. 16, 17, 18], and a

motion to seal, Mot. [D.E. 19].

On April 17, 2022, respondent filed a motion to dismiss the petition, Mot. [D.E. 20], and a

memorandum in support, Resp. Mem. [D.E. 21].

On April 18, 2022, pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975)

(per curiam), the court issued a "Rule 12" letter, notifying petitioner about the pending motion to

dismiss, the response deadline, and the consequences of failing to respond. See [D.E. 22].

On April 25, 2022, respondent filed other proposed sealed documents [D.E. 23, 24, 25, 26], and a motion to seal, Mot. [D.E. 27].

On May 16, 2022, petitioner filed a reply. See [D.E. 30].

On July 1, 2022, the court granted respondent's motions to seal and directed the parties to file supplemental briefing addressing the applicability of United States v. Taylor, 142 S. Ct. 2015, 2020–21 (2022) ("Taylor") (holding that attempted Hobbs Act robbery does not qualify as a crime of violence under 18 U.S.C. § 924(c)(3)(A) because this crime does not satisfy the "categorical approach" under the elements clause). Order [D.E. 33].

On August 1, 2022, respondent filed a response. [D.E. 34].

On August 15, 2022, petitioner filed a reply brief. [D.E. 35].

Background:

The Presentence Investigation Report ("PSR") describes the offense conduct as follows:

5. On September 15, 1992, at approximately 8:00 a.m., Richard Seaman, his wife, Cyndi Joy Seaman, and their three-year-old daughter . . . were in the master bedroom of their residence [in Parkland, Florida]. There was a knock at the front door and Cyndi Seaman went to the door and observed [petitioner] through the peep hole. [Petitioner] was a former employee and personal acquaintance of Richard Seaman, who went and opened the front door. [Petitioner] rushed through the front door, grabbed Richard Seaman over his upper arms in a "bear hug" and knocked him to the floor. [Petitioner] was armed with a .38 semi-automatic handgun. As Seaman and [petitioner] fell to the floor, the firearm discharged, and a bullet struck the tile floor of the Seaman's residence. None of the victims were injured as a result of this gun fire; however, [petitioner] was injured in his right hand. Selbie McNair-Bey and Orlando Chaff followed [petitioner] into the residence. McNair-Bey handcuffed Richard Seaman . . . and asked "where is the money and jewelry?" Richard Seaman directed him to the master bedroom closet and McNair-Bey escorted Richard Seaman to the master bedroom, while holding a firearm to the victim's back. [Petitioner] followed them into the master bedroom and began removing jewelry items and cash from drawers in the closet of the master bedroom.

6. During this time, Orlando Chaff ordered Cyndi Seaman to lay down on the floor and he handcuffed her. The Seaman's three-year-old daughter . . . entered the living room and her mother instructed her to stand next to her. Orlando Chaff was armed with a .38 caliber handgun during this exchange.

2

7. The three gunmen escorted the entire family to a Dodge van, which was parked in the driveway of the residence. . . . [Petitioner] drove the van away from the house.

8. While in the van, McNair-Bey began sorting the cash taken from the residence and distributing it to the others. [Petitioner] drove the van to the Florida Turnpike and [headed north]. At each toll gate, [petitioner] and McNair-Bey would make an effort to conceal the weapons and warn the victims to remain quiet. During the drive in the van, McNair-Bey made a comment to Richard Seaman concerning a demand for $2,500,000 from Richard Seaman's father.

9. [Petitioner] drove the van to the vicinity of Boca Raton and shortly thereafter arrived at a residence . . . . The three victims were escorted by the gunmen inside the empty house.

10. Once in the residence, Cyndi Seaman and her daughter . . . were directed into a bedroom by McNair-Bey. Chaff and [petitioner] remained with Richard Seaman and continued a discussion concerning the ransom, which [petitioner] would demand from Richard Seaman's father. Richard Seaman convinced [petitioner] that if his father was contacted, he would surely bring the police into the matter. Richard Seaman suggested to [petitioner] that he could obtain $700,000 in cash and offered assurances that he would not involve the police. Richard Seaman continued to discuss the matter of the ransom with [petitioner] and convinced him that he could easily obtain the cash from his brokerage account at Shearson Lehman in Coral Springs. Seaman advised [petitioner] that he would need a shirt and some shoes in order to enter Shearson Lehman and obtain the money.

11. McNair-Bey remained with Cyndi Seaman and her daughter during this time. He openly displayed a handgun and waived it from side to side, pointing it at Mrs. Seaman. He demonstrated to her that a safety latch was used which made the gun safe and she should "not worry." In addition to the handgun, McNair-bey was armed with what appeared to be a machine gun . . . .

14. At approximately 12:00 noon, [petitioner] and Chaff returned to the residence with a rented van, some food and clothing. [Petitioner] directed Chaff to drive Richard Seaman to the Shearson Lehman brokerage firm in Coral Springs, Florida so that Seaman could obtain the ransom money. As Richard Seaman and Chaff were leaving the residence . . . [petitioner] told [Seaman] that [petitioner's] friends would "smoke your family" if things did not go right. McNair-Bey advised [Seaman] "you be good to my partner (referring to Chaff) and I'll be good to your family."

15. During the drive to the brokerage firm, Chaff agreed to allow Seaman to enter the building alone to obtain the money. Chaff instructed Seaman to wait in the parking lot after exiting the brokerage firm and Chaff would return to the area to pick him up. Seaman advised Chaff that the transaction would take approximately 30 minutes.

3

16. When they arrived at the Shearson Lehman brokerage firm [in Coral Springs], Seaman departed the van and entered the building alone. Chaff left the area and was to return in one half hour. As soon as Seaman entered the building, he met his broker . . . and told [the broker] to dial 911 and report that he and his family had been abducted. . . . Seaman . . . provided a description of Orlando Chaff [and] advised the police that Chaff was driving a brown Plymouth Voyager van that would be returning to the Shearson Lehman offices within a half hour. . . .

18. [Police located Chaff and, after a high-speed chase and collision, arrested him]. A search of [Chaff's] person revealed $8,342 in cash. A .38 caliber handgun was found . . . where Chaff had tossed it from his vehicle. . . .

19. Approximately 20 minutes after Chaff and Richard Seaman had left the residence in Boca Raton to get the ransom money, [petitioner] and McNair-Bey placed Cyndi Seaman and her daughter . . . into a van. [Petitioner] drove around the area in search of a motel. He remarked that he was looking for a motel that did not have a lobby so that all the occupants could enter directly into a motel room. . . . He . . . eventually drove to [a] Days Inn motel [in Fort Lauderdale]. [Petitioner] rented a room, number 105, and McNair-Bey escorted Cyndi Seaman and her daughter to the motel room.

20. At approximately 1:00 p.m., [petitioner] left the motel and Cyndi Seaman and her daughter were left in the custody of McNair-Bey. They remained in the hotel room until approximately 5:55 p.m., at which time the telephone rang in the motel room. Cyndi Seaman could hear McNair-Bey talking on the telephone. She believed that McNair-Bey was speaking to [petitioner] and was being told that things had not worked out. Cyndi Seaman thought she and her daughter would then be killed. McNair-Bey hung up the telephone and ordered Cyndi Seaman and her daughter into the bathroom where they laid down inside the bathtub.

21. While in the custody of the Coral Springs Police Department, Chaff advised the officers that if he did not meet [petitioner] at the designated shopping center with Richard Seaman and the ransom money, [petitioner] would kill Cyndi Seaman and her daughter. ([Petitioner] expressly denied to the United States Probation Officer that he threatened to kill the Seamans.) Chaff agreed to cooperate and advised that he was to meet [petitioner] at a sub shop . . . . [Chaff] provided a description of [petitioner] and the van he was driving. . . . [Police were able to locate petitioner and arrest him after he exited the sub shop and entered the vehicle].

22. Subsequent to his arrest, [petitioner] was questioned concerning the whereabouts of Cyndi Seaman and her daughter. [He initially denied knowing their location]. . . . An officer . . . looked inside the van driven by [petitioner] and observed a motel key on the center console. The only identifying mark on the key was a number 105 which appeared to be a room number. Underneath the key the officer observed a business card from the Days Inn motel . . . in Fort Lauderdale.

4

The officer took the key and the business card to [petitioner] and asked him if this motel was where the two hostages were being held. [Petitioner] did not respond. Incident to his arrest, a search of [petitioner's] person revealed $1,067 in U.S. Currency.

23. Shortly thereafter, [a detective] spoke to [petitioner] concerning the location of the two female hostages. [Petitioner] confirmed that the hostages were located in room 105 at the Days Inn and were being held by his accomplice, "Bo." [Petitioner] described Bo as an extremely bad character and he expected that Bo would shoot and kill both the mother and daughter around 6:00 p.m. if [petitioner] did not contact him. In addition, [petitioner] advised the officers that he believed Bo would kill the hostages and any police officers who attempted to storm the motel room.

24. At approximately 5:25 p.m., two FBI agents and other law enforcement officers set up a command post in the vicinity of the Days Inn, where the hostages were being held. At approximately 5:55 p.m. [petitioner] called the motel room and spoke to Selbie McNair-Bey. He advised McNair-Bey that he had been arrested and that McNair-Bey should surrender to the officers and not harm the hostages. McNair-Bey surrender to police and Cyndi Seaman and her daughter . . . were released unharmed.

Presentence Investigation Report [D.E. 18] at ¶¶5–11, 14–24.

On January 12, 1993, in the United States District Court for the Southern District of Florida, a second superseding indictment also involving McNair-Bey and Chaff charged petitioner with: four counts under the Hobbs Act, 18 U.S.C. § 1951 (Counts 1-4); one count of conspiracy to kidnap, 18 U.S.C. § 1201(c) (Count 5); two counts under the Travel Act, 18 U.S.C. § 1952 (Counts 7, 9); one count of using a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c) (Count 10); and one count of possession of a firearm by a felon, 18 U.S.C. § 922(g)(1) (Count 11). Counts Two, Four, Seven, Nine, Ten, and Eleven also charged petitioner with aiding and abetting under 18 U.S.C. § 2. See [D.E. 16] (2d superseding indictment); see also United States v. Irizzary, No. 0:92-cr-06138-CMA (S.D. Fla. Jan. 12, 1993), [D.E. 54].

On March 8, 1993, pursuant to a written plea agreement, petitioner pleaded guilty to Counts Four, Five, Ten, and Eleven of the second superseding indictment. See Plea Agreement [D.E. 17] at 1–4 (providing that the statutory maximum terms of imprisonment for Count Four was up to

5

twenty years, for Count Five was up to life, and four Count Eleven was up to ten years, and that Count Ten required a mandatory term of imprisonment of five years consecutive to any other sentence imposed); see also Penalty Sheet [D.E. 16] at 11–13. "The district court accepted the plea agreement and adjudicated [petitioner] guilty of Counts Four, Five, Ten, and Eleven." In re: Elvin Irizarry, No. 20-11934 (11th Cir. June 10, 2020), Order [D.E. 2-2] at 3.

In petitioner's PSR, pursuant to section 3D1.2(b) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), the probation officer grouped together Counts Four, Five, and Eleven as part of a "common scheme or plan." See [D.E. 18] at ¶63. Pursuant to U.S.S.G. § 3D1.3(a), the probation officer calculated the offense level for each count of conviction to determine which count of the conviction in this Group held the highest offense level. Id. at ¶64.

In Count Four, the probation officer applied the robbery guideline under U.S.S.G. § 2B3.1 with a base offense level of 20. Id. at ¶65. Under U.S.S.G. § 2B3.1(b)(2)(A), a seven-level increase was added because a firearm was discharged during the robbery. Id. at ¶66. Under U.S.S.G. § 2B3.1(b)(4)(A), a four-level increase was added due to the abduction in furtherance of the robbery. Id. at ¶67. Under U.S.S.G. § 2B3.1(b)(6)(D), a three-level increase was added for to a loss exceeding $250,000. Id. at ¶68. Under U.S.S.G. § 3B1.1(c), a two-level increase was added because of petitioner's role as an "organizer, leader, manager and supervisor in this criminal activity." Id. at ¶69. Thus, the Count Four adjusted offense level was found to be 36. Id. at ¶72.

In Count Five, the guideline for kidnapping under U.S.S.G. §§ 2X1.1. and 2A4.1 was applied with a base offense level of 24. Id. at ¶73. Under U.S.S.G. § 2A4.1(b)(1), a six-level increase was added for a ransom demand. Id. at ¶74. Under U.S.S.G. § 2A4.1(b)(3), a two-level increase was added for dangerous weapon use. Id. at ¶75. Under U.S.S.G. § 3B1.1(c) a two-level increase was added for petitioner's role as an "organizer, leader, manager and supervisor." Id. at

6

¶77. Count Five's adjusted offense level was 34 but, because Count 4 yielded a higher offense level of 36, the probation officer applied the greater adjusted offense level. Id. at ¶¶79, 80.

In Count Eleven, the probation officer applied U.S.S.G. § 2K2.1, but determined that the greater adjusted offense level of 36, as determined under U.S.S.G. § 2X1.1, was applicable. Id. at ¶81. Thus, because Count 4 again yielded the highest offense level of the three Grouped counts, the PSR assigned the greater adjusted offense level of 36 to Counts 4, 5, and 11. Id. at ¶82.

In Count Ten, the probation officer cited U.S.S.G. § 2K2.4 which requires that, if a defendant is convicted under 18 U.S.C. § 924(c), the defendant shall be sentenced to a five-year term of imprisonment consecutive to any other term of imprisonment imposed, and noted that, according to U.S.S.G. § 3D1.1(b), this count cannot be grouped with the other offenses. Id. at ¶84.

The probation officer, however, also applied a two-point downward adjustment for petitioner's acceptance of responsibility under U.S.S.G. § 3E1.1(b). Id. at ¶85. The PSR found petitioner's total offense level was 34, with a criminal history category of III. Id. at ¶¶87, 92.

At sentencing, the Government raised objections to the PSR arguing, *inter alia*, that: a two-point vulnerable victim upward adjustment was warranted due to the kidnapping of the Seaman's daughter; petitioner should not receive a two-point reduction for acceptance of responsibility because he failed to show "affirmative recognition of remorsefulness" or concede he and his co-defendants planned to murder the family in the course of committing the offenses; a first-degree murder guideline under U.S.S.G. § 2A1.1 should govern the offense level for Count 5; and, because petitioner provided materially false statements to the probation officer, an obstruction of justice increase was warranted. See Hr'g Tr. [D.E. 23] at 26–27, 54–63, 68–75, 77–81, 84–99.

Petitioner also raised objections to the PSR arguing, *inter alia*, that: references to the Seaman's daughter's age should be removed; the accidental firearm discharge should not result in

7

a seven-level enhancement; a three-level acceptance of responsibility reduction was warranted, with an additional point under U.S.S.G. § 3E1.1; the first-degree murder guidelines did not apply; and an upward departure under U.S.S.G. § 5K2.3 "for extreme psychological injuries suffered by the victims" was not warranted. See Hr'g Tr. [D.E. 23] at 55–68, 75–77, 81–84, 100–109.

On the second day of sentencing, the Government withdrew its U.S.S.G. § 5K2.3 upward departure request based on the psychological trauma to the victims, and the parties argued about the appropriateness of enhancements for obstruction of justice, multiple victims, a vulnerable victim, and the applicability of the murder guidelines. See Hr'g Tr. [D.E. 24] at 2–43, 49–51.

On the third day of sentencing, the district court noted Amendment 489 to the 1993 Guidelines Manual prohibited an offence level increase for discharge of a firearm during the commission of a robbery if a defendant also is convicted under § 924(c). See Hr'g Tr. [D.E. 25] at 1–4. As the probation officer explained, however, where the loss of the weapon enhancement, despite the mandatory 60-month consecutive sentence for the § 924(c) conviction, resulted in a lower guideline range than would have resulted had the weapon enhancement been imposed, the sentencing court was authorized to consider an upward departure not to exceed the maximum of the guideline range that would have resulted had there not been a § 924(c) conviction. Id. at 4–5. After consulting with counsel, petitioner elected to be sentenced under the 1993 Guidelines Manual. Id. at 6–8. The Government then moved *ore tenus* for an upward departure under U.S.S.G. § 2K2.4, seeking a seven-level increase for petitioner's discharge of a firearm. Id. at 8. Petitioner's counsel, by contrast, argued that, should the sentencing court depart upward, a five-level increase was more appropriate because the firearm discharge was accidental. Id. at 6–7.

On the fourth day of sentencing, the district court found: it could not determine "with reasonable certainty" that murder was an object of the conspiracy to kidnap such that the guideline

8

for first-degree murder did not apply; a two-level, not a three-level, reduction for acceptance of responsibility applied; a two-level increase under U.S.S.G. § 3C1.1 applied for obstruction of justice because, by a preponderance of the evidence, one purpose of the conspiracy to kidnap was to murder the victims; due to this obstruction finding, because extraordinary circumstances did not apply, petitioner could not receive any reduction for acceptance of responsibility; and a two-level increase for a vulnerable victim under U.S.S.G. § 3A1.1 applied. See Hr'g Tr. [D.E. 26] at 35–46.

Based on these rulings, the court applied a base offense level of 20 under U.S.S.G. § 2B3.1 and increases for abduction (four levels), loss (three levels), the role in the offense (two levels), vulnerable victim (two levels), and obstruction of justice (two levels). Id. at 47. With a total offense level of 33 and a criminal history category of III, petitioner's Guideline sentencing range was 168 to 210 months plus a mandatory 60 months consecutive for the § 924(c) conviction. Id.

The district court then turned to the Government's motion for an upward departure and found that, since a seven-level enhancement under U.S.S.G. § 2B3.1(b)(2)(A) would have applied before Amendment 489 to the 1993 Guidelines Manual, a seven-level upward departure under U.S.S.G § 2K2.4 was warranted because, by a preponderance of the evidence, the weapon discharged in a struggle between petitioner and Mr. Seaman during the commission of the offense. Id. at 47–51. The district court denied both the Government's motion for a multiple victim departure under U.S.S.G. § 5K2.0, and petitioner's objections to the PSR's references to the child's age. Id. at 51–52. With an offense level of 40 and a criminal history category of III, the Count Five guideline range was 360 months to life imprisonment with Count Four and Eleven statutorily capped at 240 and 120 months, respectively, plus 60 months consecutive under Count Ten. Id.

Under these Guidelines, the district court sentenced petitioner to: the twenty-year statutory maximum as to Count Four, the statutory maximum of life imprisonment as to Count Five, the

9

statutory maximum of 120 months as to Count Eleven, with Counts Four, Five, and Eleven running concurrently, and a mandatory 60 months consecutive as to Count Ten. Id. at 62–67.

Petitioner appealed and, on August 8, 1995, the Eleventh Circuit Court of Appeals affirmed petitioner's judgment and conviction without comment. See United States v. Irizzary, 65 F.3d 182 (11th Cir. 1995) (table).

On April 11, 1997, petitioner moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Mot. [D.E. 372], Irizzary v. United States, No. 0:97-cv-06392-WJZ (S.D. Fla. April 11, 1997) (generally arguing the sentencing court misapplied the Guidelines). The sentencing court denied the motion as meritless. Id., Order [D.E. 428] (S.D. Fla. June 24, 1998).

Circa June 23, 2016, petitioner applied for leave to file a second or successive § 2255 motion, arguing that his § 924(c) conviction is unconstitutional because Hobbs Act robbery does not qualify as a "crime of violence." In Re: Elvin Irizzary, No. 16-14037 (11th Cir. June 23, 2016) (citing Johnson v. United States, 576 U.S. 591, 597 (2015) ("Johnson") (holding the Armed Career Criminal Act ("ACCA") "residual clause," defining a "violent felony" as involving "conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague)); see also Welch v. United States, 136 S. Ct. 1257, 1265 (2016) ("Welch") (holding that Johnson applied retroactively to cases on collateral review).

The Eleventh Circuit denied the application, noting that its prior decisions had "denied a Johnson-based successive application challenging an enhanced sentence under § 924(c), where the § 924(c) sentence was based on a conviction for Hobbs Act Robbery," and also found "Hobbs Act robbery clearly qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause," such that, even if Johnson applies to § 924(c), petitioner "would not benefit as his companion Hobbs Act robbery conviction does not implicate the residual clause." Id., (11th Cir. July 26, 2016).

10

Circa May 21, 2020, petitioner again sought leave to file a second or successive § 2255 motion, now arguing that his § 924(c) conviction is unconstitutional because it is unclear whether the Hobbs Act Robbery conviction (Count 4) or the Conspiracy to Kidnap conviction (Count 5), was the predicate for his § 924(c) conviction. In Re: Elvin Irizarry, No. 20-11934 (11th Cir. May 21, 2020). Petitioner further argued that conspiracy to kidnap constitutes a crime of violence only under the now invalidated "residual clause." Id. (citing United States v. Davis, 139 S. Ct. 2319, 2324 (2019) ("Davis") (holding the "residual clause" of 18 U.S.C. § 924(c)(3)(B) that criminalized the use of a firearm during a "crime of violence" was unconstitutionally vague)).

The Eleventh Circuit denied the application. Id., Order [D.E. 2-2] at 6–7 (11th Cir. June 10, 2020) (noting, although it had "not yet decided whether conspiracy to commit kidnapping is a crime of violence under § 924(c)(3)(A)'s elements clause," the Eleventh Circuit "has held that attempted Hobbs Act robbery categorically qualifies as a crime of violence under § 924(c)(3)(A)'s elements clause, which remains valid after Davis," and concluding that, because "the facts supporting [petitioner's] guilty plea make clear that his § 924(c) conviction was independently supported by the attempted and substantive Hobbs Act robbery charges in Count Four, he cannot make a *prima facie* showing that his § 924(c) conviction is unconstitutional in light of Davis.").

### Arguments:

In this § 2241 petition, petitioner raises two grounds for relief. See Pet. [D.E. 1] at 6. First, petitioner argues that he is "actually innocent of the 924(c) in relation to the Conspiracy to Kidnapping 1201(c) conviction in count 5 [sic]." Id. In support of this argument, petitioner notes that the residual clause of § 924(c)(3)(B) has been held to be unconstitutionally vague. Id. Thus, petitioner contends, because "conspiracy to Kidnap is a crime of violence only under the residual clause of § 924(c)(3)(B), "the conviction is lawful only if conspiracy to kidnap qualifies as a crime

11

of violence under the [§ 924(c)(3)(A)] elements clause [sic]." Id. Second, petitioner argues that the district court "lacked authority to sentence petitioner above the statutory maximum that would have applied but for the sentencing court's error [sic]." Id. In support, he contends:

> The attempted Hobbs Act Robbery . . . in Count 4 was the predicate offense for the 924(c) charge in Count 10. Therefore, the District Court's correct upward departure determination under U.S.S.G. 2K2.4 App. Note 2 was up to 30 months to the statutory maximum of the Hobbs Act offense in count 4, of 20 years including a 60 month consecutive sentence. For the 924(c) in count 10, for a total maximum sentence of 300 month's imprisonment [sic].

Id.

For relief, petitioner asks that the court "vacate the 924(c) conviction and sentence in relation to the conspiracy to kidnap 1201(c) conviction in count 5, which depended on now invalid residual clause 924(c)(3)(B) [sic]." Id. at 7.

Petitioner subsequently argued that he may proceed via § 2241 under the § 2255(e) savings clause test announced in United States v. Wheeler, 886 F.3d 415 (4th Cir. 2018) ("Wheeler"), cert. denied, 139 S. Ct. 1318 (2019). Pet'r's Mem. [D.E. 4] at 1 (citing Braswell v. Smith, 952 F.3d 441 (4th Cir. 2020)). Petitioner "invokes the savings clause provision to obtain relief on the substantive change of law by the Supreme Court[.]" Id. at 2 (citing, *inter alia*, Davis and Welch).

Petitioner raises two grounds for relief that are interrelated to the grounds raised in his petition. In support of the first ground, he argues that, after Davis, his enhanced sentence related to his conspiracy to kidnap conviction must be vacated because "conspiracy to Kidnap is a crime of violence only under the residual clause of § 924(c)(3)(B)." Id. at 4. Petitioner also asserts that, although the Eleventh Circuit found his § 924(c) conviction was independently supported by the attempted Hobbs Act Robbery charge in Count Four, the Guidelines do not permit the sentencing court to apply both the kidnapping and the robbery guidelines. Id. at 5. Petitioner further asserts that, "once it has been determined that the robbery guideline yields a higher final offense level, it

12

must be applied." Id. Thus, petitioner contends, enhanced penalties under § 924(c) in count ten "are nonexistent in relation to his conspiracy to kidnap offense in count five." Id.

Petitioner also argues his convictions on Counts Four, Five, and Eleven "involved the same victims in a common scheme or plan" and were "grouped for purposes of U.S.S.G. § 3D1.2(b)" such that "'the highest offense level' of those counts of conviction would govern all counts." Id. Petitioner asserts that Count Four yielded the highest offense level and, under the grouping rules of U.S.S.G. § 3D1.3(a), Count Four's guideline range governed Count Five as well. Id. Petitioner asserts that, although his § 924(c) conviction was independently supported by the attempted Hobbs Act Robbery conviction in Count Four, his sentence was enhanced as to the conspiracy to kidnap conviction in Count Five. Id. at 6. Petitioner contends that he "received a seven level upward departure under U.S.S.G. § 2K2.4, comment App. Note 2, which serves as the guidelines for the §924(c) conviction [sic]." Petitioner argues that his enhanced sentences related to his kidnapping conviction must be vacated because Davis invalidated the residual clause of § 924(c)(3)(B). Id. Petitioner also argues that the sentencing court erred in its upward departure, and that he instead should have been sentenced to a total maximum sentence of 300 months' imprisonment. Id. at 7.

In support of the instant motion to dismiss, respondent generally argues that the court lacks jurisdiction over this petition because petitioner fails to satisfy either of the 28 U.S.C. § 2255(e) "savings-clause" tests announced in Wheeler and In re Jones, 226 F.3d 328, 332 (4th Cir. 2000) (per curiam) ("Jones"). See [D.E. 21] at 18–21.

In response, petitioner argues he satisfies the Wheeler test because Davis applies retroactively. Pet'r's Reply Br. [D.E. 30] at 1. Petitioner also asserts that he filed an application for leave to file a second or successive § 2255 motion in the Eleventh Circuit seeking, under Davis, to vacate his § 924(c) in relation to his conspiracy to kidnap conviction and challenging the seven-

13

level upward departure under U.S.S.G. § 2K2.4, comment Application Note 2.  Id. at 1–2. Petitioner argues that, because the Eleventh Circuit erroneously denied this application, he "was foreclosed from testing the legality of his unlawful detention [sic]."  Id. at 2.  Petitioner contends that the sentencing court's application of U.S.S.G. § 2B3.1 "resulted in a guideline range of 168 to 210 months imprisonment."  Id.  Petitioner states: "There is no provision in the guidelines for borrowing base offense levels from the other offense guidelines."  Id. at 2–3 (citing United States v. Saavedra, 148 F.3d 1311 (11th Cir. 1998)).  Petitioner asserts, because "he could only receive a maximum sentence of 20 years," his life sentence is a "Fundamental Defect and a complete miscarriage of justice," and that the sentencing court "found [his] total offense level was 33," and then made "egregious errors."  Id. at 3.  Petitioner argues the robbery guideline offense level was enhanced four levels for kidnapping, but "the plain language of the guidelines does not allow the District Court to apply both the kidnapping and robbery guidelines."  Id.  Petitioner also asserts the sentencing court abused its discretion when it departed upward by applying U.S.S.G. § 2K2.4, App. Note 2, because his "was not one of those 'unusual cases' in which the combined sentence for the underlying offense and the firearm offense under § 924(c), was less than the maximum of the guideline range that would have resulted if the enhancement for the discharge of a firearm under [U.S.S.G. § 2B3.1 (b)(2)(A)], had been applied [sic]."  Id. at 4 (citing, *inter alia*, United States v. Wellington, 269 Fed. App'x 900 (11th Cir. 2008) (per curiam)).  Petitioner also contends that he was wrongly sentenced under the 1993 Guidelines Manual, instead of the 1992 Guidelines Manual, because Amendment 489 resulted in a longer sentence than he otherwise would have received.  Id. at 5 (citing Peugh v. United States, 569 U.S. 530, 533 (2013), for the proposition that sentencing a criminal defendant under guidelines promulgated after the criminal act that result in a higher applicable guideline sentencing range violates the Ex Post Facto clause).

14

Respondent's supplemental response argues that Taylor is inapposite because petitioner's operative conviction under Count Four of the second superseding indictment was for completed Hobbs Act robbery, not attempt, and the plea agreement makes it clear that petitioner pleaded guilty to substantive Hobbs Act robbery in Count Four, not merely an attempt. See [D.E. 34] at 1 (citing [D.E. 16, 17]). Respondent further notes that, although "attempt" is mentioned in the charging instrument, upon conviction of the completed Hobbs Act crime in Count Four the "attempt" language alleged in that count merged into the completed offense. Id. at 2–3. Thus, because completed Hobbs Act robbery remains a crime of violence in the Eleventh Circuit, petitioner still cannot satisfy either the Jones or the Wheeler savings-clause tests. Id. at 3.

Petitioner's reply argues that, pursuant to Taylor, the Eleventh Circuit erred in denying his application for leave to file a second or successive § 2255 motion. Pet'r's Br. [D.E. 35] at 1–2. Petitioner asserts the Wheeler test is satisfied because Davis applies retroactively and is subsequent to his first § 2255 motion. Id. at 2. Petitioner states he "received a seven (7) level upward departure under §2K2.4 App. Note 2, that serves as the guideline for § 924(c)." Id. Petitioner contends that, because his "total offense level was 33," the "guideline range was 168 to 210 months under [U.S.S.G. § 2B3.1] in count four, which also applied to count five as well, including a five-year mandatory sentence of his § 924(c) in count ten [sic]." Id. at 3. Thus, he asserts, "his maximum guideline sentence was 270 months' imprisonment [sic]." Id. Petitioner argues that, although the Hobbs Act robbery was the "sole predicate offense for the § 924(c) conviction," he was sentenced to life in prison. Id. Petitioner asserts, "this leaves a rational person to believe that the kidnapping offense in count five of the indictment was used as the predicate for the § 924(c) conviction." Id. Petitioner queries "how were the guidelines determined on count four for the Hobbs Act Robbery pursuant to [U.S.S.G. § 2B3.1], and the sentence imposed pursuant to [U.S.S.G. § 2A4.1] on the

kidnapping [offense] in count five [sic]." Id. Petitioner argues that this aspect of his sentencing constitutes a "miscarriage of justice" that satisfies the fourth prong of the Wheeler test and that, after Davis, enhancements of his sentence under § 924(c) now are invalid. Id.

Discussion:

Section 2241 empowers the court to grant habeas relief to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c). However, prisoners that are "convicted in federal court are required to bring collateral attacks challenging the validity of their judgment and sentence by filing a motion to vacate sentence pursuant to 28 U.S.C.A. § 2255." In re Vial, 115 F.3d 1192, 1194 (4th Cir. 1997) (en banc).

Because petitioner challenges the validity of his conviction and sentence, not his sentence's execution, he generally must seek relief under § 2255. See United States v. Poole, 531 F.3d 263, 270 (4th Cir. 2008); In re Jones, 226 F.3d at 332; In re Vial, 115 F.3d at 1194. Petitioner "may file a habeas petition under § 2241 only if the collateral relief typically available under § 2255 'is inadequate or ineffective to test the legality of his detention.'" Prousalis v. Moore, 751 F.3d 272, 275 (4th Cir. 2014) (quoting the "savings clause" of 28 U.S.C. § 2255(e)).

The United States Court of Appeals for the Fourth Circuit has recognized two distinct section 2255(e) "savings clause" tests. See Farkas v. Butner, 972 F.3d 548, 560 (4th Cir. 2020).

Under the section 2255(e) "savings clause" test announced in In re Jones, section 2255 relief is "inadequate or ineffective" to challenge a criminal conviction if:

> (1) [A]t the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

Prousalis, 751 F.3d at 275 (citing In re Jones, 226 F.3d at 333–34).

16

Under the section 2255(e) "savings-clause" test announced in Wheeler, section 2255 relief is "inadequate or ineffective" to test the legality of a sentence when:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

Wheeler, 886 F.3d at 429.

Because the section 2255(e) "savings clause" is a "jurisdictional provision," the court lacks jurisdiction to consider a section 2241 petition on the merits unless the petitioner satisfies the requirements of one of these two "savings clause" tests. See id. at 423; see also Rice v. Rivera, 617 F.3d 802, 807 (4th Cir. 2010) (per curiam).

When evaluating claims under the "savings clause," courts apply the substantive law of the circuit where the petitioner was convicted. Marlowe v. Warden, FCI Hazelton, 6 F.4th 562, 572 (4th Cir. 2021); Hahn v. Moseley, 931 F.3d 295, 301 (4th Cir. 2019). Accordingly, this petition is governed by the Fourth Circuit's procedural law but the Eleventh Circuit's substantive law.

Here, petitioner's grounds for relief fail to satisfy the second prong of the Jones test because no subsequent change of law has rendered non-criminal the conduct of which he was convicted. See In re Jones, 226 F.3d at 333 n.3 (stating the Jones test is intended to provide a remedy for the "fundamental defect presented by a situation in which an individual is incarcerated for conduct that is not criminal but, through no fault of his own, he has no source of redress").

Petitioner's asserted grounds for relief also do not satisfy the Wheeler test. Wheeler itself does not change any substantive law affecting the legality of petitioner's sentence. Petitioner seeks to rely upon Davis and Taylor. The Eleventh Circuit has found the rule in Davis to apply

17

retroactively to cases on collateral review. See Alvarado-Linares v. United States, 44 F.4th 1334, 1341 (11th Cir. 2022); In re Hammoud, 931 F.3d 1032, 1039 (11th Cir. 2019). Nevertheless, petitioner's attempted reliance on these cases is misplaced.

For the purposes of petitioner's § 924(c) conviction, § 924(c)(3)(A) and (B) respectively define "crime of violence" as an offense that is a felony and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Id. § 924(c)(3).

> Section 1951 provides, in relevant part:
>
> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a).

> Here, the record reflects that petitioner pleaded guilty to the following:
>
> A) Count IV of the second superseding indictment, which count charges that [petitioner] did knowingly and willfully obstruct, delay, and affect commerce and attempt to obstruct, delay, and affect commerce by robbery, in that [petitioner] obtained money and property from [the victims], with the consent of [a victim], which consent was induced by the wrongful use of actual and threatened force, violence, and fear of death or serious injury; in violation of Title 18, United States Code, Section 1951 and 2.
>
> B) Count V of the second superseding indictment, which count charges that [petitioner] did knowingly and willfully combine, conspire, confederate and agree to unlawfully seize, confine, kidnap, abduct and carry away and hold for ransom, reward or otherwise, [the victims]; in violation of Title 18, United States Code, Section 1201(c).

18

C) Count X of the second superseding indictment, which count charges that [petitioner] did knowingly and willfully use and carry a firearm, that is, at least one of the following: two semi-automatic pistols, a revolver, a shotgun, and a semi-automatic rifle, during and in relation to a crime of violence which is felony prosecutable in a court in the United States, that is a violation of Title 18, United States Code, Section 1951 or Title 18, United States Code, Section 1201(c) as set forth in Counts One through Five of this indictment; all in violation of Title 18, United States Code, Sections 924(c) and 2.

D) Count XI of the second superseding indictment, which count charges that [petitioner] having been convicted on or about December 16, 1988, in the Circuit Court of Cook County Illinois, of a crime punishable for a term exceeding one year . . . did knowingly possess a firearm in and affecting commerce . . . in violation of Title 18, United States Code, Sections 922(g)(1) and 2.

Plea Agreement [D.E. 17] at 1.

Although petitioner argues that he was convicted of attempted Hobbs Act robbery, the plea agreement instead reflects that he pleaded guilty to substantive Hobbs Act robbery, which satisfies the elements or "use-of-force" clause of § 924(c)(3)(A). See In re Fleur, 824 F.3d 1337, 1340 (11th Cir. 2016) (finding that a substantive Hobbs Act robbery conviction "clearly qualifies as a 'crime of violence' under the use-of-force clause in § 924(c)(3)(A)"); see also § 7:10. Merger Rule, *1 Wharton's Criminal Law* § 7:10 (16th ed.) (collecting cases for the proposition "a person may not be convicted, 'on the basis of the same course of conduct,' of both attempt and the target crime, because the attempt 'merges' with the completed offense.'" (footnotes and citations omitted)); cf. Taylor, 142 S. Ct. at 2020–21; Davis, 139 S. Ct. at 2324; United States v. St. Hubert, 909 F.3d 335 (11th Cir. 2018) (abrogated by Taylor). Thus, Davis and Taylor are substantially distinguishable, and petitioner cannot rely on these cases to satisfy the second prong of the Wheeler test.

Next, although petitioner argues that his Count Four Hobbs Act robbery conviction was the sole predicate offense for his § 924(c) conviction, his life sentence "leaves a rational person to believe that the kidnapping offense in count five of the indictment was used as the predicate for

19

the § 924(c) conviction [sic]," Pet'r's Br. [D.E. 35] at 2, or that the trial court failed to specify which count constituted the predicate offense, these claims miss the mark. The second superseding indictment shows the § 924(c) charge in Count Ten was premised on both the Hobbs Act robbery charged in Count Four and the conspiracy to kidnap charged in Count Five. See [D.E. 16] at 7. Whether conspiracy to kidnap remains a "crime of violence" after Davis is immaterial in this case because, as noted above, petitioner's substantive Hobbs Act robbery conviction remains a "crime of violence" such that he pleaded guilty to a predicate crime that fully supports his § 924(c) conviction. See In re Navarro, 931 F.3d 1298, 1302–03, n.4 (11th Cir. 2019) ("Navarro") (finding a movant had not shown his § 924(c) conviction was unconstitutional under Davis where the conviction was independently supported by other charged crimes and "there [was] no uncertainty as to which of the three predicate offenses identified in the indictment underlie [the movant's] § 924(c) conviction. Instead, his plea agreement and factual proffer make clear the conviction was based on all three"); accord In re: Elvin Irizarry, No. 20-11934 (11th Cir. June 10, 2020), Order [D.E. 2-2] at 6–7. Thus, petitioner's case is distinguishable from Eleventh Circuit cases where a movant made a *prima facie* showing that the § 924(c) predicate offense was found invalid under *Davis* or where it was unclear from the indictment which crimes of conviction were the predicate offense. C.f. In re Hammoud, 931 F.3d at 1041 (granting leave to file a second or successive § 2255 motion where movant made a *prima facie* showing that his § 924(c) conviction in relation to a conviction for solicitation of another to commit murder, in violation of 18 U.S.C. § 373, was invalid under *Davis*, but noting the movant "will bear the burden of showing that he is actually entitled to relief on his *Davis* claim, meaning he will have to show that his § 924(c) conviction resulted from application solely of the residual clause"); In re Gomez, 830 F.3d 1225, 1228 (11th Cir. 2016) ("Gomez") (granting movant leave to file a second or successive § 2255 motion where,

after a jury trial, it was unclear from the indictment which of the four possible companion crimes was a predicate offense for the § 924(c) count of conviction); see also Calderon v. United States, 811 F. App'x 511, 517 (11th Cir. 2020) (per curiam) (distinguishing Navarro and Gomez).

Next, although petitioner argues that the trial court erred in its Guideline application, subjecting him to a sentence above the statutory maximum, these claims are belied by the record.

Petitioner previously challenged the sentencing court's seven-level upward departure under U.S.S.G § 2K2.4 pursuant to Amendment 489 of the 1993 Guidelines Manual. See United States v. Irizzary, 191 F. App'x 898, 899 (11th Cir. 2006). The Eleventh Circuit noted:

> At the time Irizzary was sentenced in 1992, Amendment 489 had just changed application note 2 to § 2K2.4 to the version that appeared in the sentencing guidelines prior to Amendment 599. *See* U.S.S.G. App. C, amend. 489 (Nov. 1993). Amendment 489 eliminated the subtraction formula from the previous version of the guidelines, and allowed the district court to upwardly depart to the maximum of the guideline range that would have resulted had there been no conviction under § 924(c). U.S.S.G. § 2K2.4, comment. (n.2).
>
> In 1993, Application Note 2 provided as follows:
>
>> Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of an explosive or firearm (e.g., § 2B3.1(b)(2)(A)-(F) (Robbery)) is not to be applied in respect to the guideline for the underlying offense.
>>
>> In a few cases, the offense level for the underlying offense determined under the preceding paragraph may result in a guideline range that, when combined with the mandatory consecutive sentence under 18 U.S.C. § 844(h), § 924(c), or § 929(a), produces a total maximum penalty that is less than the maximum of the guideline range that would have resulted had there not been a count of conviction under 18 U.S.C. § 844(h), § 924(c), or § 929(a) (i.e., the guideline range that would have resulted if the enhancement for possession, use, or discharge of a firearm had been applied). In such a case, an upward departure may be warranted so that the conviction under 18 U.S.C. § 844(h), § 924(c), or § 929(a) does not result in a decrease in total punishment. An upward departure under this paragraph shall not exceed the maximum guideline range that would

21

have resulted had there not been a count of conviction under 18
U.S.C. § 844(h), § 924(c), or § 929(a).

U.S.S.G. § 2K2.4, comment. (n.2) (Nov. 1993). In 2000, Application Note 2 stated:

> If a sentence under this guideline is imposed in conjunction with a
> sentence for an underlying offense, do not apply any specific offense
> characteristic for possession, brandishing, use, or discharge of an
> explosive or firearm when determining the sentence for the
> underlying offense. A sentence under this guideline accounts for any
> explosive or weapon enhancement for the underlying offense of
> conviction, including any such enhancement that would apply based
> on conduct for which the defendant is accountable under § 1B1.3
> (Relevant Conduct). Do not apply any weapon enhancement in the
> guideline for the underlying offense, for example, if (A) a co-
> defendant, as part of the jointly undertaken criminal activity,
> possessed a firearm different from the one for which the defendant
> was convicted under 18 U.S.C. § 924(c). However, if a defendant is
> convicted of two armed bank robberies, but is convicted under 18
> U.S.C. § 924(c) in connection with only one of the robberies, a
> weapon enhancement would apply to the bank robbery which was
> not the basis of the 18 U.S.C. § 924(c) conviction.

> [...]

> In a few cases, the offense level for the underlying offense
> determined under the preceding paragraphs may result in a guideline
> range that, when combined with the mandatory consecutive
> sentence under 18 U.S.C. § 844(h), § 924(c) or § 929(a), produces a
> total maximum penalty that is less than the maximum of the
> guideline range that would have resulted had there not been a count
> of conviction under 18 U.S.C. § 844(h), § 924(c) or § 929(a) (*i.e.,*
> the guideline range that would have resulted if the enhancements for
> possession, use, or discharge of a firearm had been applied). In such
> a case, an upward departure may be warranted so that the conviction
> under 18 U.S.C. § 844(h), § 924(c) or § 929(a) does not result in a
> decrease in the total punishment. An upward departure under this
> paragraph shall not exceed the maximum of the guideline range that
> would have resulted had there not been a count of conviction under
> 18 U.S.C. § 844(h), § 924(c) or § 929(a).

U.S.S.G. § 2K2.4, comment. (n.2) (Nov. 2000). In 2002, Amendment 642
redesignated Application Note 2 as Application Note 4. U.S.S.G. App. C, amend.
642 (Nov. 2002).

United States v. Irizzary, 191 F. App'x 898, 900–01 (11th Cir. 2006).

The present iteration, now re-designated Application Note 4, provides, in relevant part:

In a few cases in which the defendant is determined not to be a career offender, the offense level for the underlying offense determined under the preceding paragraphs may result in a guideline range that, when combined with the mandatory consecutive sentence under 18 U.S.C. § 844(h), § 924(c), or § 929(a), produces a total maximum penalty that is less than the maximum of the guideline range that would have resulted had there not been a count of conviction under 18 U.S.C. § 844(h), § 924(c), or § 929(a) (i.e., the guideline range that would have resulted if the enhancements for possession, use, or discharge of a firearm had been applied). In such a case, an upward departure may be warranted so that the conviction under 18 U.S.C. § 844(h), § 924(c), or § 929(a) does not result in a decrease in the total punishment. An upward departure under this paragraph shall not exceed the maximum of the guideline range that would have resulted had there not been a count of conviction under 18 U.S.C. § 844(h), § 924(c), or § 929(a).

Application Note 4 to U.S.S.G. 2K2.4 (current version).

As noted above, the record reflects that, after consulting with counsel, petitioner elected to be sentenced under the 1993 Guidelines Manual instead of the 1992 Guidelines Manual. See Hr'g Tr. [D.E. 25] at 1–8. The record also reflects that the sentencing court's seven-level upward departure under U.S.S.G § 2K2.4 pursuant to Amendment 489 of the 1993 Guidelines Manual was exactly equivalent to the seven-level increase in the Count Four robbery offense level calculation pursuant to the discharge of a firearm that was originally contemplated by the PSR under the 1992 Guidelines Manual. Compare Hr'g Tr. [D.E. 26] at 47–51, with [D.E. 18] at ¶66.

Because the sentencing court's seven-level upward departure was contemplated under Amendment 489 and did not exceed the maximum guideline range that would have resulted had there been no conviction under § 924(c), this departure was not an erroneous guideline calculation arising to the level of a "fundamental defect" under the fourth prong of the Wheeler test. Cf. Braswell, 952 F.3d at 450; Lester v. Flournoy, 909 F.3d 708, 715 (4th Cir. 2018). Also, because it did not result in a longer sentence than petitioner otherwise would have received, this application of the 1993 Guidelines is not an *ex post facto* violation. Cf. Peugh, 569 U.S. at 533

23

Contrary to petitioner's arguments, his sentence also did not exceed the applicable statutory maximum penalties; rather, as discussed above, and pursuant to the Guidelines, he was sentenced to statutory maximum terms of imprisonment on all his counts of conviction. Compare Hr'g Tr. [D.E. 26] at 62–67, with Plea Agreement [D.E. 17] at 1–4; and Penalty Sheet [D.E. 16] at 11–13.

Also contrary to petitioner's arguments, the sentencing court did not improperly "apply both the kidnapping and robbery guidelines." Cf. Pet'r's Reply Br. [D.E. 30] at 3. Rather, as he acknowledges, Counts Four, Five, and Eleven were "grouped for purposes of U.S.S.G. § 3D1.2(b)" such that "'the highest offense level' of those counts of conviction would govern all counts." Pet'r's Mem. [D.E. 4] at 5. The record reflects the PSR applied a four-level increase to the robbery offense level calculation "due to the abduction in furtherance of the robbery." See [D.E. 18] at ¶67. The sentencing court, inter alia, adopted this four-level increase, applied the noted seven-level upward departure, and, because the resulting robbery adjusted offense level was greater than the kidnapping adjusted offense level, used the greatest of these adjusted offense levels for sentencing. See Hr'g Tr. [D.E. 26] at 47–51. The Petitioner again shows no "fundamental defect" under the fourth prong of the Wheeler test. Cf. Braswell, 952 F.3d at 450; Lester, 909 F.3d at 715.

The other cases upon which petitioner seeks to rely also are distinguishable from the instant action and do not provide any avenue for habeas relief. Cf. Saavedra, 148 F.3d at 1314 (remanding for resentencing a case on direct appeal where the sentencing court erred in basing its sentence on U.S.S.G. § 2D1.2, rather than on U.S.S.G. § 2D1.1); Wellington, 269 F. App'x at 902 (finding no reversable error where the district court properly denied a motion to modify a sentence).

To the extent petitioner challenges the Eleventh Circuit's denial of his motion for leave to file a second or successive § 2255 motion, any avenue for relief is in the Eleventh Circuit. To the extent petitioner instead asserts that he may proceed under § 2241 because this denial rendered the

§ 2255 remedy "inadequate or ineffective," he is incorrect. See In re Vial, 115 F.3d at 1194 n.5 ("[T]he remedy afforded by § 2255 is not rendered inadequate or ineffective merely because an individual has been unable to obtain relief under that provision [ ] or because an individual is procedurally barred from filing a § 2255 motion." (citations omitted)); see also McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc., 851 F.3d 1076, 1087 (11th Cir. 2017) (en banc) ("That a particular argument is doomed under circuit precedent says nothing about the nature of the motion to vacate. The motion to vacate is still 'adapted to the end' of testing the claim regardless of the claim's success on the merits.").

In sum, because petitioner fails to satisfy the Jones test or the Wheeler test, he likewise fails to satisfy the section 2255(e) "savings clause" requirement of showing that a § 2255 motion is "inadequate or ineffective to test the legality of his detention," and the court lacks jurisdiction to consider this § 2241 habeas petition. See Wheeler, 886 F.3d at 423; Rice, 617 F.3d at 807.

Finally, because reasonable jurists would not find the court's treatment of any of these claims debatable or wrong, and because none of the issues are adequate to deserve encouragement to proceed further, the court also denies a Certificate of Appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

### Conclusion:

In sum, the court: GRANTS respondent's motions to dismiss [D.E. 20]; DISMISSES WITHOUT PREJUDICE the action for lack of jurisdiction; DENIES a Certificate of Appealability; and DIRECTS the clerk to close the case.

SO ORDERED. This 25th day of January 2023.

RICHARD E. MYERS II
Chief United States District Judge